EVA HEFELE, complainant-respondent,

*v.*

FRANK HEFELE, defendant-appellant.

[Submitted October 30th, 1931. Decided May 16th, 1932.]

*Mr. John Winans,* for the appellant.

*Mr. Earle A. Merrill,* for the respondent.

The opinion of the court was delivered by

DONGES, J.

The respondent filed her bill for separate maintenance and had a decree in the court below, awarding her $35 a week for the support and maintenance of herself and of an infant child of the parties, and making an allowance of $200 to her solicitor. From this decree the defendant appeals.

The parties went through a ceremonial marriage on September 10th, 1921, and have one daughter, born in 1924. They lived together until August 18th, 1930, when they separated, after executing a separation agreement by which the husband agreed to pay to the wife $35 a week for the support of herself and the child. For a time the payments were made, but nothing was paid after October 18th, 1930, for the support of the respondent. The appellant did, however, continue to pay $10 a week for the support of the child. The bill was filed November 26th, 1930.

The respondent in her bill alleged the marriage to appellant; that it was her second marriage; that she had a daughter, now seventeen years of age, by her first marriage.

The first defense interposed by the husband was that the respondent had a husband living at the time of her marriage to him and, therefore, there never was any legal marriage between the parties to this suit. He did not counterclaim for any affirmative relief.

It appears from the testimony of the wife (the husband offered no testimony) that in 1911, when she was nineteen years of age, she and one Lind or Lindquist obtained a marriage license in New York. She testified that they never went through any marriage ceremony. There is no testimony to the contrary. She further testified that she never lived with Lind; that she saw Lind from time to time, and in April, 1913, a child was born to her as the result of her

relations with him. She gave the child the name of Irene Lind, and thereafter called herself Lind for the sake of the child's name; that she last saw Lind a few months after Irene's birth; that she did not represent herself as Lind's wife; that Lind always addressed her in her own name, and that she was married to appellant by her own name.

Appellant's solicitor stated at the hearing that they had traced Lindquist as being alive in the latter part of 1914, but had lost trace of him thereafter.

In this state of the evidence, the appellant urges that the respondent did not sustain the burden of proving a legal marriage to him.

The presumption is in favor of the validity of the marriage between these parties. *Vreeland* v. *Vreeland, 78 N. J. Eq. 256.* In *Tyll* v. *Keller, 94 N. J. Eq. 426,* the present chief-justice, speaking for this court, said:

"The law ordinarily presumes a continuation of life until seven years have elapsed after a person has been last heard of. But this presumption is not a conclusive one; and, where that presumption would, as in the present case, render the party against whom it is raised guilty of a bigamous marriage, and would stamp his child as a bastard, the presumption of innocence of crime overcomes that of continuance of life, even though seven years have not elapsed. And it was for this reason that this court held, in the case of *Vreeland* v. *Vreeland, 78 N. J. Eq. 256,* that where a former husband of a defendant in that case had disappeared and been unheard of for a period of more than three but less than four years, at the end of which time the defendant had remarried, the second marriage was presumed to have been a lawful one, the presumption of continued life having been overcome by the presumption of the innocence of the defendant of the crime of bigamy."

If there were testimony of a lawful marriage to Lindquist, under the doctrine of these cases, the marriage between appellant and respondent must be presumed to be a valid one.

The second point urged by appellant is that the separation of the parties was voluntary and there was no abandonment by appellant.

The real defense by appellant was a repudiation of the marriage and that he was under no legal obligation as husband of the respondent. The case is replete with evidence of this attitude on the part of the appellant. The agreement was repudiated in a letter written on October 23d, 1930, by the husband's solicitor to the wife's solicitor. At the hearing on February 26th, 1931, before the advisory master, counsel for appellant said: "I concede the agreement was revoked from the time the husband learned of the existence of the prior husband." It would further appear from the letter referred to, that the husband's solicitor requested that the wife refrain from making further efforts to see her husband, as "such calls are not likely to produce beneficial results for either side and that it is likely to be injurious to his business to have altercations break out, as I am informed has occurred in the past." In the same letter, suit to determine the rights of the parties is invited.

It is apparent that overtures on behalf of the wife were rejected, and it was evident that offers of resumption of marital relations would have been of no avail.

The refusal to make payments under the agreement was put upon the ground of no marriage between the parties. When the husband, without legal excuse, set up this claim, and asserted the agreement was at an end for this reason, he was guilty of an abandonment of his wife. The assent of the wife to the separation cannot be used to bar her under the principle *volenti non fit injuria* unless the continuation of such separation can be charged to the wife, and it is not apparent that the state of mind of the husband was such as to make possible a return of the parties to the marriage state. The return to the marriage state involves not only a living together in a physical sense, but resumption of all the relations that marriage denotes. The denial of marriage manifested a state of mind so incompatible with a resumption of relations as husband and wife that the wife was not required to make further futile and humiliating overtures to her husband to resume living together. His conduct at the trial gave ample evidence of the futility of such overtures. *Cavileer* v. *Cavileer, 94 N. J. Eq. 160.*

There can be no doubt that the husband has continuously and willfully separated himself from the wife; such separation was likewise obstinate from the time he repudiated their marriage and declined to recognize or live with her as husband and wife. There was, therefore, an abandonment of the wife in a legal sense which gives her a right to maintenance for herself and her child by the appellant.

The decree will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.

*For reversal*—None.